UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:14-00195 |
| | ) | |
| BOBBY GENE ERVIN | ) | |

**MEMORANDUM OPINION AND ORDER**

In this felon in possession case, Defendant Bobby Gene Ervin has filed a Motion to Suppress (Docket No. 85) firearms found in the trunk of his car. He claims that the search, which led to the discovery of the weapons, violated Arizona v. Gant, 556 U.S. 332 (2009). Having considered the record and the evidence from the evidentiary hearing on February 2, 2017, the Court finds that the search did not violate Gant or the Fourth Amendment to the United States Constitution.

In Gant, the Supreme Court held that, consistent with the Fourth Amendment, police are "authorize[d] to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." 556 U.S. at 343. If, as stated in the Incident Report, Defendant was in custody in the back of a patrol car and Deputy Cato of the Trousdale County Sheriff's Department then searched the vehicle "incident to arrest", (Def. Ex. 1 at 2) this would run afoul of Gant. However, what Deputy Cato wrote in his report is not controlling. What counts is "the objective facts known to the officers at the time of the search." United States v. Smith, 510 F.3d 641, 648 (6th Cir. 2007); see, Bond v. United States, 529 U.S. 334, 339 n. 2 (2000) (stating that"[t]he subjective intent of the law enforcement officer is irrelevant in determining whether that officer's actions violate the Fourth Amendment").

1

The objective facts in this case are that, a couple of weeks prior to the traffic stop on June 22, 2013, Deputy Cato took a report from Defendant's mother, sister, and niece, during which time he was informed that Defendant was angry and behaving irrationally. Deputy Cato was also told that Defendant had threatened to get an "AR" (which Deputy Cato understood to be an assault rifle) and that Defendant had told his family members that they could go ahead and call the police, but that he would be there first. That same day, the Sheriff's Department received information that someone in a vehicle matching the description of Defendant's automobile had engaged in threatening behavior in a Foodland parking lot.

On the day of the stop, the Trousdale County Sheriff's Department received information about a possible domestic situation in neighboring Macon County. In that incident, Defendant's girlfriend called 911 and said that (1) Defendant was sitting in the driveway of her house; (2) Defendant had slept with a gun; (3) she had been threatened and was scared; and (4) she had barricaded herself in her home.

In response to that information, Deputy Cato drove to the Trousdale/Macon County line to see if Defendant would return to Trousdale County. Within minutes he did, and was pursued by Deputy Cato and another officer, both of whom activated the sirens and light bars on their vehicles. Defendant drove recklessly and evaded the officers for several minutes until Deputy Cato overtook Defendant's vehicle and the following deputy executed a "pit maneuver," which forced Defendant to stop. Defendant was immediately taken into custody.

During a search of the Honda that Defendant was driving, Deputy Cato found a DPMS model A-15, .223 caliber assault rifle ("AR"), and a Beretta model 950-BS, .22 caliber pistol. The discovery of those weapons served as the basis for the Indictment in this case.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "Nevertheless, because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." Brigham City, Utah v. Stuart, 547 U.S. 398, 404 (2006) (citing Flippo v. West Virginia, 528 U.S. 11, 13 (1999)).

One such exception is a "search incident to arrest" as discussed in Gant. However, two other exceptions – the automobile exception and the inventory search exception – were not implicated by Gant. See, United States v. Nicksion, 628 F.3d 368, 377 (7th Cir. 2010) ("Gant explicitly recalled, and did not curtail, the automobile exception to the warrant requirement"); United States v. Arrocha, 713 F.3d 1159, 1164 (8th Cir. 2013) ("Gant does not apply to an inventory search"); see also, Bryant v. Dasilva, 582 Fed. App'x 56, 57-58 (2nd Cir. 2014) (quoting Gant, 556 U.S. at 351) ("Gant expressly holds that where the requirements of the search-incident-to-arrest exception are met, 'a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.'"). Both of those exceptions are applicable here.

"The automobile exception allows officers to search a vehicle without a warrant if they have 'probable cause to believe that the vehicle contains evidence of a crime.'" United States v. Galaviz, 645 F.3d 347, 355 (6th Cir. 2011) (citation omitted). "This exception has traditionally been based on the 'ready mobility' of the automobile, which created 'an exigency sufficient to excuse failure to obtain a search warrant,'" but more "[r]ecent cases have clarified that the automobile exception need not rest on an independent showing of exigency, because '[e]ven in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile

3

vehicle justified application of the vehicular exception.'" Id. (citations omitted).

Critical to the automobile exception is the existence of probable cause. "Probable cause exists when there is a 'fair probability,' the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." United States v. Helton, 314 F.3d 812, 819 (6th Cir.2003) (quoting United States v. Davidson, 936 F.2d 856, 859 (6th Cir.1991)). "In determining whether probable cause exists," the Court again "look[s] to the objective facts known to the officers at the time of the search," and this "may emanate from collective police knowledge." United States v. Domenech, 430 Fed. App'x 392, 396 (6th Cir. 2011) (citations omitted).

Here, when Defendant was observed returning to Trousdale County, police were aware that his girlfriend had just called 911, said that Defendant had threatened her and was outside her residence, and stated that Defendant had slept with a gun. This type of information tended to confirm what Deputy Cato had learned just a couple of weeks earlier – that Defendant had been acting abnormally and had threatened to arm himself with an "AR." Moreover, when police activated their emergency lights and sirens, Defendant refused to stop, which only heightened the officers' concerns. See, United States v. Williams, 475 Fed. App'x 36, 39 (6th Cir. 2012) (observing that "if officers have reasonable suspicion that an individual has committed or is committing a crime, and when approached by officers the individual flees or attempts to flee, the reasonable suspicion 'ripens' into probable cause"); Weaver v. Shadoan, 340 F.3d 398, 409 (6th Cir. 2003) (citing cases for the proposition that "headlong flight from police presence is the consummate act of evasion and suggestive of wrongdoing").

Regardless, the weapons would inevitably have been discovered during an inventory search. Such searches "are now a well-defined exception to the warrant requirement of the Fourth

4

Amendment.'" United States v. Hockenberry, 730 F.3d 645, 658 (6th Cir. 2013) (quoting Colorado v. Bertine, 479 U.S. 367, 371 (1987)). The "routine practice of securing and inventorying the automobiles' contents" when vehicles are impounded was "developed in response to three distinct needs: the protection of the owner's property while it remains in police custody . . . ; the protection of the police against claims or disputes over lost or stolen property . . . ; and the protection of the police from potential danger[.]" South Dakota v. Opperman, 428 U.S. 364, 369-71 (1976). Such searches "are not subject to the warrant requirement because they are conducted by the government as part of a 'community caretaking' function, 'totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.'" Bertine, 479 U.S. at 381 (quoting Cady v. Dombrowski, 413 U.S. 433, 441 (1973)).

"In order to be deemed valid, an inventory search may not be undertaken 'for purposes of investigation,' and it must be conducted 'according to standard police procedures.'" United States v. Smith, 510 F.3d 641, 650 (6th Cir. 2007) (quoting United States v. Lumpkin, 159 F.3d 983, 987 (6th Cir. 1998)). However, "the mere fact that an officer suspects that contraband may be found in a vehicle does not invalidate an otherwise proper inventory search," id., but "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." Florida v. Wells, 495 U.S. 1, 5 (1990).

Here, while Deputy Cato and others undoubtedly had suspicions that an assault weapon or other firearms would be found in Defendant's car, Defendant was in custody and going to jail at the time the decision to search was made. An inventory search at that point was within departmental policy, which provides that, "[e]ven if no[] search conditions are present, an officer may always . . . [p]erform inventory searches of vehicle to be impounded." (Govt. Ex. 1 at 3). Thus, and

5

regardless of Deputy Cato's thoughts and actions immediately after Defendant was taken into custody, the weapons would be subject to the inevitable discovery doctrine, which "applies where the facts indicate that the officers inevitably would have discovered and seized the tainted evidence by following 'routine procedures.'" United States v. Garcia, 496 F.3d 495, 506 (6th Cir.2007) (citation omitted); see United States v. Robinson, 390 F.3d 853, 871 (6th Cir. 2004) (observing that "the record indicates that an inventory search would have been conducted in accordance with written police policy, so that the contents of the vehicle would be admissible under the doctrine of inevitable discovery"); United States v. Motley, 93 Fed. App'x 898, 901 (6th Cir. 2004) (noting that "we need not address the factually murky question of whether or not the gun was in plain view in the car" because, under the inevitable discovery doctrine, the "gun would have been discovered pursuant to [an] inventory search"); United States v. Kimes, 246 F.3d 800, 805 (6th Cir. 2001) ("The Fourth Amendment permits impoundment decisions and inventory searches that are objectively justifiable . . . regardless of an officer's subjective intent").

Accordingly, Defendant's Motion to Suppress (Docket No. 85) is hereby DENIED.

It is SO ORDERED.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE